# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL NO.** |
| | ) | |
| v. | ) | **VIOLATIONS:** 18 U.S.C. § 371 |
| | ) | (Conspiracy to Commit Offenses) |
| | ) | |
| **ABDUL AHAD QURASHI,** | ) | 18 U.S.C. § 981(a)(1)(C) & |
| | ) | 28 U.S.C. § 2461(c) |
| Defendant. | ) | (Criminal Forfeiture) |

## INFORMATION

The United States of America hereby charges that:

### *Background*

All times material to this Information, unless specific dates are otherwise noted:

1.      The United States Army Intelligence and Security Command ("INSCOM") was a United States government agency headquartered at Fort Belvoir in Fairfax County, Virginia. Among its other duties, INSCOM delivered linguist support to United States Army components.

2.      On or about September 7, 2007, INSCOM awarded contract W911W4-07-D-0010 ("Contract") to a government contractor headquartered in Ohio ("Prime Contractor"). The purpose of the Contract was to supply qualified linguists to serve in support of United States military operations in Afghanistan. The initial value of the Contract was approximately $703,000,000.

3.      Subcontractor #1 was a private company headquartered in Arlington, Virginia which provided professional services to the federal government, including in the area of language services.

4.      In or about February 2008, the Prime Contractor awarded subcontract MEP-08-0001 to Subcontractor #1. The subcontract was to identify and recruit qualified linguists that were proficient in the Dari and Pashto languages, as well as English, for work on the Contract.

5. Subcontractor #2 was a private company headquartered in Ohio. It provided consulting and assessments for oral and written language skills for both government agencies and private companies.

6. In or about February 2008, the Prime Contractor awarded a subcontract to Subcontractor #2 to administer independent language tests to the linguist candidates identified by Subcontractor #1. This independent testing was conducted during short telephone interviews, known as Oral Proficiency Interviews ("OPIs"), to ensure that linguist candidates identified by Subcontractor #1 met minimum proficiency standards in Dari and Pashto, as well as English, for work on the Contract.

7. Subcontractor #1 employed recruiters to identify and recruit qualified linguist candidates for positions on the Contract.

8. During the recruiting process, Subcontractor #1 recruiters collected personal information from linguist candidates—generally the candidate's name, phone number, street address, email address, social security number, and date of birth—and shared it with Subcontractor #2, which used this information to verify the identity of linguist candidates during the OPI tests.

9. Subcontractor #1 sent linguist candidates that met the minimum proficiency standards on the OPI test to the Prime Contractor's Pre-Deployment Processing Center ("PDPC") in Linthicum, Maryland, where the candidates underwent additional testing and training before their deployment to Afghanistan. Usually, the cost of sending a candidate to PDPC included air fare and per diem and would be included in the invoice submitted by Subcontractor #1 to the Prime Contractor, and later billed by the Prime Contractor to INSCOM.

10. Subcontractor #1 linguist recruiters were paid a base salary by Subcontractor #1, and could achieve bonuses of between $250 and $2,500 based on how far through a multi-step

vetting process, which included PDPC, their linguist candidates progressed ("Recruiting Bonuses").

11. Defendant **ABDUL AHAD QURASHI** (**"QURASHI"**) a citizen of the United States, was employed as a linguist recruiter by Subcontractor #1 from on or about September 7, 2010 through on or about June 11, 2012, and was based in New York.

12. Co-conspirator #1 ("CC-1") was employed as a regional recruiting manager by Subcontractor #1 from on or about March 3, 2010 through on or about June 1, 2012. She oversaw a team of Subcontractor #1 recruiters working remotely in California and New York which included **QURASHI**.

13. Recruiters 1-4 (individually "R-1," "R-2," "R-3", and "R-4") were recruiters on CC-1's team.

## COUNT ONE
### Conspiracy
### (18 U.S.C. §371)

14. Paragraphs 1-13 of this Criminal Information are re-alleged and incorporated by reference as if set out in full.

15. From in or about September 7, 2010 through on or about June 11, 2012, in the District of Columbia and elsewhere, **QURASHI** did knowingly conspire and agree with others, known and unknown, to commit offenses against the United States, that is:

a. In a contract with the United States, where the amount of the contract was $1,000,000 or more, to knowingly execute and attempt to execute a scheme and artifice with the intent: (a) to defraud the United States; and (b) to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1031(a); and

b.      To devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

### *Object of the Conspiracy*

16.     The object of the conspiracy were for **QURASHI** and his co-conspirators to fraudulently earn bonuses for themselves and their employers by providing false information regarding prospective linguist candidates for the Contract, and to conceal the conspiracy.

### *Manner and Means of the Conspiracy*

17.     The manner and means by which **QURASHI** and his co-conspirators sought to, and did, achieve the purpose of the conspiracy included the following:

a.      **QURASHI** and his co-conspirators, in furtherance of the conspiracy would transmit or cause to be transmitted by means of wire communication in interstate or foreign commerce writings for the purpose of executing the scheme or artifice to defraud;

b.      **QURASHI** and his co-conspirators would knowingly recruit linguist candidates who did not meet the minimum language proficiency standards in Dari, Pashto, and/or English, under the Contract;

c.      **QURASHI** and his co-conspirators would have a surrogate, usually a third-party, but in some cases themselves ("fraudulent test taker"), take OPI tests on behalf of linguist candidates who did not meet the minimum language proficiency standards;

d.      **QURASHI** personally took OPI tests for candidates that he and others recruited that could not meet the minimum proficiency standards on their own;

4

      e.    **QURASHI** and his co-conspirators would obtain the test questions and answers for the OPIs in order to coach candidates or surrogates on the materials what would be tested;

      f.    To enable the fraudulent test takers to impersonate candidates during OPI tests, **QURASHI** and his co-conspirators would supply the fraudulent test takers with candidates' biographical information as well as the date and time of candidates' OPI tests;

      g.    **QURASHI** and his co-conspirators would provide the Prime Contractor with the fraudulent test takers' telephone numbers in place of the linguist candidates' telephone numbers;

      h.    To conceal the conspiracy, **QURASHI** and his co-conspirators would often switch to a foreign language (Dari or Pashto) when discussing the cheating scheme in written and oral communications;

      i.    When Subcontractor #2 testers would call the telephone number provided for a linguist candidate to administer the OPI test, the fraudulent test taker would use the linguist candidate's personal information to impersonate the candidate and pass the OPI test;

      j.    The linguist candidate (for whom the fraudulent test taker had passed an OPI test) would be sent to PDPC in Linthicum, Maryland, for additional language testing and training for potential deployment to Afghanistan, with expenses for the travel to Maryland being a reimbursed expense by INSCOM under the Contract;

      k.    **QURASHI** and his co-conspirators received Recruiting Bonuses from Subcontractor #1 based on linguist candidates that Subcontractor #1 hired because of falsified OPI tests.

*Acts in Furtherance of the Conspiracy*

18. In furtherance of the conspiracy and to effect the objects thereof, **QURASHI** and his co-conspirators, performed or caused the performance of the following overt acts, among others not described herein, in the District of Columbia and elsewhere:

    a. On or about September 8, 2011, Co-conspirator-1 ("CC-1") sent an email to **QURASHI** relating to Candidate 1: "He failed before so tu migeri testisha ?". The last three words of the preceding sentence translated into English mean in substance "you take his test?". **QURASHI** responded that day, "Baley....". This word translated to English means in substance "Yes." Later that day, CC-1 notified **QURASHI** by email that: "Test is confirmed at 646-267-4171 3-4 Saturday 09/10/11".

    b. On or about September 10, 2011, **QURASHI** took and passed Candidate 1's OPI test on telephone number 646-267-4171.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

1. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of conspiracy to commit an offense against the United States, that is, wire fraud, in violation of 18 U.S.C. § 371, as alleged in this Information, the defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendant's criminal conduct, as determined by the Court at sentencing.

2. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Respectfully submitted,

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
United States Department of Justice

By: *Daniel P. Butler*

Michael P. McCarthy, D.C. Bar #1020231
Daniel P. Butler, D.C. Bar # 417718
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Bond Building, Fourth Floor
Washington, D.C. 20530
(202) 305-3995 (McCarthy)
Michael.McCarthy2@usdoj.gov
(202) 307-2184 (Butler)
Daniel.Butler2@usdoj.gov