UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 1:20-cr-00078-CKK |
| | ) | |
| v. | ) | VIOLATIONS: 18 U.S.C. § 371 |
| | ) | (Conspiracy to Commit Offenses) |
| | ) | |
| ABDUL AHAD QURASHI, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States, by and through its undersigned attorneys, and Abdul Ahad Qurashi ("Qurashi"), with the concurrence of his attorney, Matthew Wilson, stipulate and agree that the following facts fairly and accurately describe Qurashi's conduct in the offense to which he is pleading guilty. These facts do not constitute all of the facts known to the parties concerning the charged offense and related conduct. This statement is being submitted to demonstrate that sufficient facts exist to establish that Qurashi committed the offense to which he is pleading guilty. Qurashi knowingly, voluntarily, and truthfully admits to the facts set forth below.

### *Relevant Entities, Contracts and Subcontracts*

1. The United States Army Intelligence and Security Command ("INSCOM") was a United States government agency headquartered at Fort Belvoir in Fairfax County, Virginia. Among its other duties, INSCOM delivered linguist support to United States Army components.

2. On or about September 7, 2007, INSCOM awarded contract W911W4-07-D-0010 ("Contract") to a government contractor headquartered in Ohio ("Prime Contractor"). The purpose of the Contract was to supply qualified linguists to serve in support of United States military operations in Afghanistan. The initial value of the Contract was approximately $703,000,000.

3. Subcontractor #1 was a private company headquartered in Arlington, Virginia which provided professional services to the federal government, including in the area of language services.

4. In or about February 2008, the Prime Contractor awarded subcontract MEP-08-0001 to Subcontractor #1. The subcontract was to identify and recruit qualified linguists that were proficient in the Dari and Pashto languages, as well as English, for work on the Contract.

5. Subcontractor #2 was a private company headquartered in Ohio. It provided consulting and assessments for oral and written language skills for both government agencies and private companies.

6. In or about February 2008, the Prime Contractor awarded a subcontract to Subcontractor #2 to administer independent language tests to the linguist candidates identified by Subcontractor #1. This independent testing was conducted during short telephone interviews, known as Oral Proficiency Interviews ("OPIs"), to ensure that linguist candidates identified by Subcontractor #1 met minimum proficiency standards in Dari and Pashto, as well as English, for work on the Contract.

### *The Recruitment Process under the Subcontracts*

7. Subcontractor #1 employed recruiters to identify and recruit qualified linguist candidates for positions on the Contract.

8. During the recruiting process, Subcontractor #1 recruiters collected personal information from linguist candidates they identified—generally the candidate's name, phone number, street address, email address, social security number, and date of birth—and shared it with Subcontractor #2, which used this information to verify the identity of linguist candidates during the OPI tests.

9. The OPI test was scored based on correct answers on a scale of 1 to 5. A score of 3 to 5 was a passing score, and a score of 2 or less was a failed test.

10. Subcontractor #1 sent linguist candidates that its recruiters identified and that met the minimum proficiency standards on the OPI test to the Prime Contractor's Pre-Deployment Processing Center ("PDPC") in Linthicum, Maryland, where the candidates underwent additional testing and training before their deployment to Afghanistan. Usually, the cost of sending a candidate to PDPC included air fare and per diem and would be included in invoices submitted by Subcontractor #1 to the Prime Contractor, and later billed by the Prime Contractor to INSCOM.

11. Subcontractor #1 recruiters were paid a base salary by Subcontractor #1, and could achieve bonuses of between approximately $250 and $2,500 based on how far through a multi-step process, which included PDPC, their linguist candidates progressed ("Recruiting Bonuses"). The Recruiting Bonuses were reimbursable under the Contract.

12. In or about the spring of 2012, the Prime Contractor became aware that surrogates might have taken OPIs for certain candidates. At that time, the Prime Contractor retested and terminated a number of candidates who had passed through the recruiting and deployment process.

### *Qurashi and his co-conspirators*

13. Qurashi was employed as a linguist recruiter by Subcontractor #1 from on or about September 7, 2010 through on or about June 11, 2012, and was based in New York. Telephone numbers 718-304-4155 and 646-267-4171 belonged to Qurashi during this time period.

14. Co-conspirator #1 ("CC-1") was employed as a regional recruiting manager by Subcontractor #1 from on or about March 3, 2010 through on or about June 1, 2012. She oversaw a team of Subcontractor #1 recruiters working remotely in California and New York which included Qurashi.

15. Recruiters 1-4 (individually "R-1," "R-2," "R-3", and "R-4") were recruiters on CC-1's team.

16. Qurashi admits that he committed all of the acts discussed in this Factual Basis within the scope of his employment by Subcontractor #1 and for the benefit of Subcontractor #1.

### *The Conspiracy*

17. From in or about March 2011 to in or about May 2012, in the District of Columbia and elsewhere, Qurashi and his co-conspirators, including CC-1, Recruiters 1-4, and others, agreed to engage in a scheme to defraud, and conspired to commit the offenses of major fraud against the United States, in violation of 18 U.S.C. § 1031(a), and wire fraud, in violation of 18 U.S.C. § 1343.

18. The purposes of the conspiracy were for Qurashi and his co-conspirators to fraudulently earn bonuses for themselves and their employers by providing false information regarding prospective linguist candidates for the Contract, and to conceal the conspiracy.

19. The manner and means by which the Qurashi and his co-conspirators sought to, and did, achieve the purpose of the conspiracy included the following:

    a. Qurashi and his co-conspirators, in furtherance of the conspiracy, would transmit or cause to be transmitted by means of wire communication in interstate or foreign commerce writings for the purpose of executing the scheme or artifice to defraud;

    b. Qurashi and his co-conspirators would knowingly recruit linguist candidates that did not meet the minimum language proficiency standards in Dari and/or Pashto, as well as English, under the Contract;

    c. Qurashi and his co-conspirators would have a surrogate, usually a third-party, but in some cases themselves ("fraudulent test taker"), take OPI tests on behalf of linguist candidates that did not meet the minimum language proficiency standards;

  d. Qurashi personally took OPI tests for candidates that he and others recruited that could not meet the minimum proficiency standards on their own;

  e. Qurashi and his co-conspirators would obtain the test questions and answers for the OPIs in order to coach candidates or surrogates on the materials what would be tested;

  f. To enable the fraudulent test takers to impersonate candidates during OPI tests, Qurashi and his co-conspirators would supply the fraudulent test takers with candidates' biographical information as well as the date and time of candidates' OPI tests;

  g. Qurashi and his co-conspirators would provide the Prime Contractor with the fraudulent test takers' telephone numbers in place of the linguist candidates' telephone numbers;

  h. To conceal the conspiracy, Qurashi and his co-conspirators would often switch to a foreign language (Dari or Pashto) when discussing the cheating scheme in written and oral communications;

  i. When Subcontractor #2 testers would call the telephone number provided for a linguist candidate to administer the OPI test, the fraudulent test taker would use the linguist candidate's personal information to impersonate the candidate and pass the OPI test;

  j. The linguist candidate (for whom the fraudulent test taker had passed an OPI test) would be sent to PDPC in Linthicum, Maryland, for additional language testing and training for potential deployment to Afghanistan, with expenses for the travel to Maryland being a reimbursed expense by INSCOM under the Contract;

  l. Qurashi and his co-conspirators received Recruiting Bonuses from Subcontractor #1 based on linguist candidates that were hired because of falsified OPI tests.

20. To accomplish the manner and means of the conspiracy, Qurashi and his co-conspirators committed the following overt acts, among others:

*Recruiters Shared OPI Test Questions*

21. The Subcontractor #1 recruiters and supervisors shared OPI test questions and answers, which were then supplied to candidates, as follows:

b. On or about July 8, 2011, R-1 sent an email to CC-1 asking "[h]ow many pages in this? U could've sent in pdf." Later that day, CC-1 responded stating "[i]t's the OPI questions...so cannot email to any one has to be faxed ."

c. On or about September 15, 2011, R-2, sent an email to R-1, copying Qurashi. The attachment was titled "Pashto Test 9.15.11". The message stated: "Here is a complete OPI taken today. Please feel free to share with anyone who will need help. It has not been translated but it is exactly replica of the test." Shortly thereafter, CC-1 sent an email to R-2, copying Qurashi: "Can someone translate this to pashto please. I have a few opi tomorrow".

d. On or about September 15, 2011, R-3 sent an email to CC-1, R-1, R-2, and Qurashi, with three attachments titled "Pashto Test 9.15.11," "Pashto Questions 8.15.11" and "Pashto Questions 9.12.11," which email stated: "LOL...look at what I have 8/15/11 it has the same questions as [another recruiter's] candidate today! :) I think the tester's are getting lazy...the test is getting a little easier, look at what I got for 9/12. My candidate's Pashto isn't that strong and they still passed on 9/12." The "Subject" line stated "8/15 is the same as 9/15."

e. On or about September 15, 2011, R-3 sent an email to CC-1, R-1, R-2, and Qurashi stating: "Be nice to the VA team and get us some of their candidates questions...[another co-conspirator] takes a lot of the tests himself, tell his to write the dam questions down and exchange with us lol".

6

f. On May 2, 2012, R-3 sent an email to Qurashi, R-1, R-2, R-4, and CC-1 stating: "Are any of your candidates taking the OPI in the next few days? I have someone that wants to retake it next Tuesday or Wednesday and I want to get some more test questions over to her so she passes this time. [R-1], can you ask [a candidate] to write down any questions she remembers?"

g. On or about May 4, 2012, R-3 sent an email to Qurashi, R-1, R-2, R-4, and CC-1 stating: "These were 5 out of the 10 that she remembered and knows fully, she almost passed the OPI. That's why hopefully [a candidate] gives you some question so I can pass it on to my candidates...keep me posted." Shortly thereafter, R-2 replied stating "these are the exact question they had asked [candidate]." Later that day, R-2 replied again stating: "This is why we need to share amongst out team, if I could've gotten some more questions over to my candidate she would've passed and been at the PDPC lol".

22. On May 17, 2012, R-3 sent an email to Qurashi, R-1, R-2, R-4, and CC-1: "Here are some of the questions from [candidate's] test yesterday...can someone translate it later today or tomorrow?" Below that message were nine statements in English, such as "The airport is not suitable for large cargo planes."

*Recruiters Took Tests for Unqualified Candidates*

23. On or about September 8, 2011, CC-1 sent an email to Qurashi relating to Candidate #1: "He failed before so tu migeri testisha ?". The last three words of the preceding sentence translated into English are approximately "you take his test?". Qurashi responded that day, "Baley....". This word translated into English is approximately "Yes." Later that day, CC-1 notified Qurashi by email that: "Test is confirmed at 646-267-4171 3-4 Saturday 09/10/11".

24. On or about September 10, 2011, Qurashi took and passed Candidate #1's OPI test on telephone number 646-267-4171.

7

25. On or about November 12, 2011, Candidate #1 was hired by Subcontractor #1 as a linguist and subsequently sent to Afghanistan.

26. In or about late-2011, Subcontractor #1 paid bonuses to, among others, CC-1 ($1,000) and Qurashi ($1,000) relative to the hiring of Candidate #1.

27. On or about July 18, 2011, Candidate #2, who lived in California, failed an OPI test using a California telephone number.

28. On or about August 18, 2011, Candidate #2 failed a second OPI test using the same California telephone number.

29. On or about September 15, 2011, CC-1 sent an email to Qurashi stating: "Yak nafar test [Candidate #2] bayat begira ." This sentence translated into English is approximately "Someone must take [Candidate #2's] test." Later that day, CC-1 sent a second email to Qurashi stating: "Yes, brother [Candidate #2] wants to do it but I don't think his English is good enough."

30. On or about October 25, 2011, CC-1 sent an email to Qurashi asking "what number should he tested ? nov 11th between 12-1 works for you ?" Qurashi responded by email that day stating: "The 718 number". Qurashi admits that "The 718 number" refers to telephone number 718-304-4155, which belonged to him.

31. On or about November 22, 2011, Qurashi took and passed Candidate #2's OPI test on telephone number 718-304-4155.

32. On or about September 24, 2011, Qurashi sent an email regarding Candidate #3 to CC-1 stating: "OPI this Monday September 26th 3-4 pm 646-267-4171".

33. On or about September 26, 2011, CC-1 sent an email to Qurashi stating: "Opi will be on September 28th 3-4 pm. On 718-304-4155".

34. On or about September 28, 2011, Qurashi took and passed Candidate #3's OPI test on telephone number 718-304-4155.

35. On or about November 5, 2011, Candidate #3 was hired by Subcontractor #1 as a linguist and subsequently sent to Afghanistan.

36. Qurashi admits that he took OPI tests for linguist candidates, including Candidate #1-3, that could not meet the minimum language proficiency standards to work on the Contract on their own.

37. In or about late-2011, Subcontractor #1 paid bonuses to, among others, CC-1 ($250) and Qurashi ($250) relative to the hiring of Candidate 3.

*Recruiters Received Financial Bonuses*

38. In 2011, Qurashi received approximately $24,750 in Recruiting Bonuses.

39. In 2012, Qurashi received approximately $3,000 in Recruiting Bonuses.

All in violation of Title 18, United States Code, Section 371.

Respectfully submitted,

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
United States Department of Justice

By: /s/ Daniel P. Butler

Michael P. McCarthy, D.C. Bar #1020231
Daniel P. Butler, D.C. Bar # 417718
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Bond Building, Fourth Floor
Washington, D.C. 20530
(202) 305-3995 (McCarthy)
Michael.McCarthy2@usdoj.gov
(202) 307-2184 (Butler)
Daniel.Butler2@usdoj.gov

## DEFENDANT'S ACCEPTANCE

The preceding Statement of the Offense is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

I have read every word of this Statement of the Offense or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 3/12/2020

Abdul Ahad Qurashi
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it fully with my client. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 3/12/20

Matthew Wilson, Esq.
Counsel for defendant Abdul Ahad Qurashi